151 P.3d 920 (2006)
2007 OK CIV APP 1
CIMMARRON TRANSPORTATION, L.L.C., Plaintiff/Appellant,
v.
Sharon BUTLER, County Assessor of Seminole County, State of Oklahoma, Jim Hardin, County Treasurer of Seminole County, State of Oklahoma, and the Seminole County Board of Equalization, Defendants/Appellees.
No. 101,832.
Court of Civil Appeals of Oklahoma, Division No. 4.
September 12, 2006.
Rehearing Denied December 5, 2006.
Mike Mordy, Mordy & Mordy, P.C., Ardmore, OK, for Appellant.
Timothy L. Olsen, Assistant District Attorney, Wewoka, OK, for Appellees.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 4.
JOHN F. REIF, Judge.
¶ 1 This case concerns the valuation of 45.5 miles of pipeline in Seminole County for ad valorem taxation in 2003. There is no dispute the pipeline is subject to ad valorem taxation in 2003 on the basis of its fair cash value as of January 1, 2003. The controversy between the owner of the pipeline, Cimmarron Transportation, L.L.C., and the Seminole County Assessor is how the fair cash value of this pipeline should be determined.
¶ 2 Cimmarron has contended that the fair cash value should be based on the price Cimmarron paid January 1, 2002, to acquire a package of 1,835.96 miles of pipeline that included the 45.5 miles at issue. The permile unit price for just the pipe was $70 per mile, or $3,255 for the 45.5 miles of pipe in Seminole County. The County Assessor disagreed and has contended that the fair cash *921 value should be based on the replacement cost less depreciation. The County Assessor determined the replacement cost was $528,181.56.
¶ 3 Cimmarron appealed the County Assessor's valuation to the Seminole County Board of Equalization. The Board of Equalization also used replacement cost to determine the pipeline's fair cash value. However, the Board fixed the fair cash value of the pipeline at $438,204.62.
¶ 4 Cimmarron next appealed the valuation of the Board of Equalization to District Court and received a trial de novo. Cimmarron not only offered details of its purchase of the pipeline package, but also presented the testimony of an expert appraiser. The expert testified that $70 per mile was a reasonable unit price based on the expert's research of six comparable sales. The County Assessor testified that she valued the pipeline using cost information compiled from the oil and gas industry, and that the Board of Equalization had used similar information compiled by the Oklahoma Tax Commission. At the conclusion of the trial de novo, the trial court ruled the "Board of Equalization's valuation method is within the law and is the best method to determine fair cash value for the pipeline in question." The trial court "adopted" and "upheld" the decision of the Board of Equalization.
¶ 5 In the present appeal, Cimmarron argues that the trial court showed improper deference to the valuation of the Board of Equalization and, in doing so, did not make a true de novo determination of value. Alternatively, Cimmarron argues that the evidence of its willing-buyer/willing-seller purchase on January 1, 2002, should have been given both legal effect and evidentiary weight over the replacement value used by the County Assessor and Board of Equalization. For the reasons that follow, we agree that the valuation should have been based on evidence of a recent "fair voluntary sale" as stated in Article 10, § 8(A)(1) of the Oklahoma Constitution, or willing-buyer/willing-seller sale as provided in 68 O.S.2001 § 2802(18). However, we conclude that the weight of the evidence shows that a transaction after Cimmarron's purchase of the pipeline package was such a sale, and not the purchase of the pipeline package itself.
¶ 6 The Oklahoma Supreme Court has recognized that "it is the sale value which controls assessments" and not "intrinsic value" or "other evidence tending to show what market value might be . . . in the absence of such a sale." Bliss Hotel Co. v. Thompson, 1962 OK 234, ¶ 19, 378 P.2d 319, 322. The Supreme Court also said a trial court acts contrary to the clear weight of the evidence when it disregards evidence of "the actual bona fide, arms length sale price absent any special depressing circumstances." Id. at ¶ 20, 378 P.2d at 322.
¶ 7 In the case under review, the trial court correctly disregarded Cimmarron's January 1, 2002, purchase of the pipeline package. We reach this conclusion because the evidence shows that the seller was endeavoring to divest itself of pipeline that (1) involved expenditures, but produced no revenue and (2) exposed the seller to environmental liability it was no longer willing to bear. The trial court could infer that these factors were special circumstances that depressed the price, and, therefore, conclude the package sale did not represent the pipe's "fair cash value."
¶ 8 However, on the same day that Cimmarron purchased the pipeline package, it resold a portion of the pipeline. This resale involved a unit price of about $390/mile for the pipe involved. Unlike its purchase of the pipeline package, Cimmarron's resale involved no special depressing circumstances.
¶ 9 Cimmarron's resale of a portion of the pipe for $390/mile reflects that the pipe was worth far more than the $70/mile unit price it paid for the package. Significantly, Cimmarron itself did not differentiate between any of the pipe in the package when it argued the unit price should be $70/mile and we see no reason to limit the $390/mile value to only the portion that was resold. We believe the resale price reflects "the evidence of the market itself" concerning the value of all the pipe acquired by Cimmarron on January 1, 2002.
*922 ¶ 10 An actual, bona fide, arms-length sale price, close in time to the date for ad valorem assessment, is "controlling," as to property's fair cash value, absent any special depressing circumstances. The resale in question provides such an arms-length sale price. The trial court's adoption and approval of the replacement cost method was contrary to law and against the clear weight of the evidence. Accordingly, it is reversed and this case is remanded with directions to value the 45.5 miles of pipe in Seminole County at $390/mile for a total value of $18,135.
¶ 11 REVERSED AND REMANDED WITH DIRECTIONS.
RAPP, V.C.J., and GABBARD, P.J., concur.